UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JUSTIN MICHAEL WALSH,

                    Plaintiff,                         Case No. 2:24-cv-153

v.                                                     Honorable Jane M. Beckering

JEFF HOWARD et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Desormeau, Green, Belleau, and Teneyck. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Shunk, Beaulieu, Voorhees, Howard, Storey, and Batho. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Butler: claims under 42 U.S.C. §§ 1981 and 1985, § 1983 official capacity claims, Eighth and Fourteenth Amendment claims, claims of conspiracy, claims for violation of MDOC policies and rules, claims for violation of criminal law, and all First Amendment claims *other than* Plaintiff's First Amendment retaliation claim related to the issuance of the Class 2 misconduct complaint. Plaintiff's First Amendment retaliation claim against Defendant Butler, individually, related to the issuance of the Class 2 misconduct complaint and supplemental state law claims remain in the case. The Court will also deny Plaintiff's request for discovery (*see* ECF No. 1, PageID.9–10, 19) and Plaintiff's motion to appoint counsel (ECF No. 4).

**Discussion**

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following KCF staff in their individual and official capacities: Warden Jeff Howard, Deputy Warden B. Storey, Assistant Deputy Warden C. Batho, Acting Assistant Deputy Warden R. Beaulieu, Inspector Tuller Desormeau, Corrections Officer S. Butler, Captain S. Shunk, Sergeant J. Green, Grievance Coordinator R. Voorhees, Corrections Officer Belleau, and Inspector Unknown Teneyck. (Compl., ECF No. 1, PageID.2, 7–8.)

On December 11, 2023, prisoners in Unit B were issued store items. (*Id.*, PageID.11.) While Plaintiff was receiving his 80 items, prisoners were called to chow lines. (*Id.*) Plaintiff was required to check his store items before leaving the area and then go to his cell to secure his store items to prevent theft. (*Id.*) When Plaintiff was late to the chow lines to receive his meal for lunch,

2

Defendant Butler asked Plaintiff why he was late. (*Id.*, PageID.12.) Plaintiff explained what he had been doing in reference to his store items and further explained that he is allowed his "daily essential food, calorie, nutritional intake to sustain life." (*Id.*) Defendant Butler denied Plaintiff his tray. (*Id.*) When Plaintiff told Defendant Butler that he would be filing a grievance, Defendant Butler became angry and issued Plaintiff a "Class 2 out of place misconduct." (*Id.*)

On December 19, 2023, Defendant Shunk acted as the hearing officer on Plaintiff's Class 2 misconduct. (*Id.*, PageID.13.) In response to Plaintiff's allegations of constitutional violations against Defendant Butler, Defendant Shunk told Plaintiff that he would not put Plaintiff's claims in the hearing report and that Plaintiff would need to use the grievance process to address his constitutional claims. (*Id.*) Defendant Shunk found Plaintiff guilty of the Class 2 misconduct, and Defendant Beaulieu "signed off" on Plaintiff's appeal, doing nothing to "correct the false misconduct." (*Id.*) Defendants Beaulieu and Voorhees rejected Plaintiff's grievances. (*Id.*, PageID.15, 17–18.)

On March 28, 2024, Defendant Belleau was watching the chow lines when Plaintiff received his tray without a sandwich. (*Id.*, PageID.15.) Plaintiff is legally blind and, therefore, misses items on his food tray when the line is moving. (*Id.*) When Plaintiff told Defendant Belleau that he did not receive a sandwich, Defendant Belleau told Plaintiff, "You ain't getting no f[*****] sandwich." (*Id.*) Plaintiff replied, "F[***] off, I'm filing a grievance against you, you can't deny me my portion of food, all you have to do is check the video camera footage." (*Id.*, PageID.16.) Defendant Belleau told Plaintiff in front of the "entire prisoner population in food service," "Come back here you little c[***] sucker, my ticket and top-lock will void your grievance." (*Id.*) Plaintiff filed grievances and made a Prison Rape Elimination Act (PREA) complaint regarding Defendant

Belleau's "derogatory comments of a homosexual nature," which Plaintiff alleges put his "life in danger." (*Id.*)

"Staff" interviewed Plaintiff four times related to Plaintiff's grievances and Defendants Teneyck, Desormeau, and Green attempted to get Plaintiff to sign off on his grievances and threatened to transfer Plaintiff to a new facility if he refused. (*Id.*) Specifically, on March 31, 2024, and April 15, 2024, Defendants Desormeau and Teneyck called Plaintiff in to the control center in an attempt to have Plaintiff drop his grievance. (*Id.*, PageID.17.) They told Plaintiff that he did not have a PREA claim and refused to perform an investigation. (*Id.*) On April 6, 2024, Defendant Green called Plaintiff to the office and asked Plaintiff to sign off on his grievance or be transferred to another facility. (*Id.*, PageID.16–17.) When Plaintiff refused, Defendant Green told Plaintiff that Plaintiff did not have a PREA complaint. (*Id.*, PageID.17.)

Eventually, Defendants Voorhees, Beaulieu, and Storey rejected Plaintiff's grievances. (*Id.*, PageID.16, 18, 19.) Defendant Voorhees also provided Plaintiff with an untimely Step 2 appeal, which was not corrected by Defendants Voorhees, Storey, and Howard. (*Id.*, PageID.19.) Defendants Howard, Storey, Batho, Teneyck, Tuller, Desormeau, and Green refused to conduct any investigation of Plaintiff's PREA complaints. (*Id.*) Plaintiff alleges that he "put Defendants [Howard, Storey, and Batho] on notice of prohibited conduct of [Defendants Butler, Shunk, Green, Beaulieu, Voorhees, Belleau]" but Defendants Howard, Storey, and Batho failed to respond to Plaintiff's kites. (*Id.*, PageID.11.)

Based on the foregoing allegations, Plaintiff brings claims under 42 U.S.C. §§ 1981, 1983, and 1985, and Michigan state law for retaliation, conspiracy, cruel and unusual punishment, violations of due process, substantive due process, equal protection, discriminatory harassment, criminal forgery, perjury, sexual assault, and sexual harassment. (*Id.*, PageID.6, 9.) Plaintiff also

seeks to bring a claim under the PREA (*id.*, PageID.6) and references the violation of MDOC policy directives and rules (*id.*, PageID.10). Plaintiff seeks monetary and injunctive relief (*Id.*, PageID.9–10, 20.)

Within the body of Plaintiff's complaint, Plaintiff requests that the Court subpoena video footage and audio recordings pursuant to Federal Rule of Civil Procedure 26. (*Id.*, PageID.9–10, 19.) The Court will construe Plaintiff's request as a motion for discovery. Plaintiff has also filed a motion for the appointment of counsel. (ECF No. 4.)

## II.   Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Pace v. Timmermann's Ranch and Saddle Shop Inc.*, 795 F.3d 748, 754 n.10 (7th Cir. 2015), *and Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

6

failed to pay a debt, and E infringed his copyright, all in different transactions—
should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and

Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions

and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his

claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to

reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Plaintiff first describes the December 11, 2023 actions by Defendant Butler.[1] (ECF

No. 1, PageID.11.) Plaintiff's claims against Defendant Butler are based upon Defendant Butler's

actions in denying Plaintiff his lunch and issuing Plaintiff a Class 2 misconduct complaint after

Plaintiff told Defendant Butler that he would file a grievance. (*Id.*, PageID.11–12.)

Plaintiff also alleges that Defendant Shunk acted as the hearing officer on Plaintiff's Class

2 misconduct complaint issued by Defendant Butler, that Defendant Beaulieu "signed off" on

Plaintiff's appeal (*id.*, PageID.13), and that Defendants Beaulieu and Voorhees rejected Plaintiff's

grievances regarding the foregoing actions (*id.*, PageID.15, 17–18). Finally, Plaintiff alleges that

he "put Defendants [Howard, Storey, and Batho] on notice of prohibited conduct of [Defendants

Butler, Shunk, Green, Beaulieu, Voorhees, Belleau]" but Defendants Howard, Storey, and Batho

---

[1] The analysis of joinder must start somewhere. Plaintiff's factual allegations against Defendant
Butler are the first allegations described in Plaintiff's complaint and are alleged to have occurred
first in time. By accepting Defendant Butler as the foundation for the joinder analysis, the Court
is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

failed to respond to Plaintiff's kites. (*Id.*, PageID.11.) The Court will address Plaintiff's claims against Defendant Shunk, Beaulieu, Voorhees, Howard, Storey, and Batho as transactionally related to Plaintiff's claims against Defendant Butler arising out of the December 11, 2023, incident.

However, no matter how liberally the Court construes Plaintiff's allegations, Plaintiff has not stated at least "one claim against each [remaining] defendant [that] is transactionally related to the claim against the first defendant, and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Plaintiff's claims against Defendants Desormeau, Green, Belleau, and Teneyck arise solely out of the March 28, 2024 incident in which Plaintiff alleges a violation of the PREA, unconnected to the December 11, 2023 incident. Accordingly, the Court concludes that, while Defendants Shunk, Beaulieu, Voorhees Howard, Storey, and Batho are properly joined, Plaintiff has improperly joined Defendants Desormeau, Green, Belleau, and Teneyck.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Desormeau, Green, Belleau, and Teneyck to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. Civ. P. R. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of

claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's claims against Defendants Desormeau, Green, Belleau, and Teneyck arose, at the earliest, during March and April 2024. Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Desormeau, Green, Belleau, and Teneyck because they are misjoined, and the Court will dismiss

Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits.[2] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs.").

**III.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[2] If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration does mean that all claims arising out these events are properly joined.

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

As noted above, the Court liberally construes Plaintiff's complaint as raising the following claims against Defendants Butler, Shunk, Beaulieu, Vorhees, Howard, Storey, and Batho in their individual and official capacities: claims under 42 U.S.C. §§ 1981, 1983, and 1985, and Michigan state law for retaliation, conspiracy, cruel and unusual punishment, violations of due process, substantive due process, equal protection, claims for violation of criminal laws, and claims for violation of MDOC policies and rules. (*See* ECF No. 1, PageID.6, 9, 10.)

### A.    Section 1981 Claims

In the introductory section of Plaintiff's complaint, Plaintiff references § 1981; however, the complaint contains no further references to § 1981. (*See* ECF No. 1, PageID.9.)

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination. *See* 42 U.S.C. § 1981. In *Jett v. Dallas Independent School District,* 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not itself provide a remedy against state actors. *Id.* at 731. Plaintiff's claims are against state actors. And, regardless, Plaintiff fails to allege any *facts* showing that he was involved in the making or enforcing of contracts between public and private actors or that he faced race-based employment discrimination. Plaintiff therefore fails to state a claim under § 1981.

### B.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Here, Plaintiff's claims against Defendants arise out of a Defendant 11, 2023 incident involving Defendant Butler (ECF No. 1, PageID.11), and the subsequent actions by Defendants Shunk in presiding over the hearing on Plaintiff's Class 2 misconduct issued by Defendant Butler and by Defendants Beaulieu and Voorhees in rejecting Plaintiff's grievances (*id.*, PageID.15, 17–18). Plaintiff also alleges that that Defendants Howard, Storey, and Batho did not respond to Plaintiff's kites (*id.*, PageID.11). However, Plaintiff does not allege that any of the foregoing

Defendants are engaged in any ongoing violations of Plaintiff's constitutional rights. Therefore, because Plaintiff alleges only past conduct and does not seek relief properly characterized as prospective, the Court will dismiss Plaintiff's official capacity claims for injunctive relief as well.

### 2.    Claims Against Defendants Howard, Storey, Batho, Beaulieu and Voorhees and Claims Against Defendants Butler and Shunk Regarding Plaintiff's Use of the Grievance Procedure

Plaintiff claims that Defendants Beaulieu and Voorhees denied Plaintiff's grievances and that Defendants Howard, Storey, Batho, Beaulieu, and Voorhees otherwise failed to address Plaintiff's complaints. Plaintiff also alleges that he asked Defendant Shunk to include his constitutional claims in the hearing report regarding Plaintiff's Class 2 misconduct complaint, which that Defendant Butler had issued Plaintiff, but Defendant Shunk refused, telling Plaintiff that Plaintiff would need to use the grievance process to address his claims, and eventually finding Plaintiff guilty.

To the extent that Plaintiff intended to bring a Fourteenth Amendment claim regarding his use of the grievance procedure, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, any intended procedural due process claim regarding Plaintiff's use of the grievance procedure will be dismissed.

Furthermore, Plaintiff's First Amendment rights were not violated by Defendants' rejection of Plaintiff's grievances or their failure to respond to Plaintiff's complaints. First, the First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

And second, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). Therefore, for these reasons as well, the Court

finds that Plaintiff has failed to state a cognizable First Amendment claim against Defendants based on their handling of Plaintiff's grievances and complaints.

Moreover, as to Defendants Howard, Storey, Batho, Beaulieu, and Voorhees, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To the extent that Plaintiff seeks to hold Defendants Howard, Storey, Batho, Beaulieu and Voorhees liable due to their supervisory positions, he fails to state such a claim. Government officials, such as Defendants Beaulieu, Voorhees, Howard, Storey, and Batho may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

16

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts that would plausibly suggest that Defendants Beaulieu, Voorhees, Howard, Storey, and Batho authorized, approved, or knowingly acquiesced in any unconstitutional conduct such that it could be said that Defendants Beaulieu, Voorhees, Howard, Storey, and Batho caused any violation of Plaintiff's constitutional rights. Therefore, Plaintiff fails to state claim under § 1983 against Defendants Beaulieu, Voorhees, Howard, Storey, and Batho.

In summary, all of Plaintiff's claims against Defendants Beaulieu, Voorhees, Howard, Storey, and Batho will be dismissed for failure to state a claim.[3] Further, any intended First Amendment and Fourteenth Amendment due process claims against Defendants Butler and Shunk regarding Defendants' handling of Plaintiff's grievances and complaints will be dismissed for failure to state a claim.

### 3.    Eighth Amendment Claims

Plaintiff alleges that Defendant Butler refused to allow Plaintiff to receive his lunch on December 11, 2023. (ECF No. 1, PageID.11–12.) The Court will construe this as an Eighth Amendment claim for deliberate indifference.

---

[3] Plaintiff's claims against these Defendants are also subject to dismissal for the reasons set forth in the below sections of the Opinion.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under

18

conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the

subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act

with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of

recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the

risk, even if the harm ultimately was not averted." *Id.* at 844.

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of

confinement,' including insuring, among other things, that prisoners receive adequate . . . food."

*Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*,

511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452

U.S. at 349. Thus, the deprivation of a few meals for a limited time generally does not rise to the

level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir.

2012) (holding that the denial of seven meals over six days is not an Eighth Amendment violation);

*Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (holding that the denial of five meals

over three consecutive days, and a total of seven meals over six consecutive days, does not rise to

Eighth Amendment violation, where the prisoner fails to allege that his health suffered);

*Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (explaining that providing

a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because

the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v.*

*Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not

sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d

504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Considering this case law, Plaintiff's allegation that Defendant Butler refused to allow Plaintiff to receive his meal on one occasion fails to state an Eighth Amendment claim.

Plaintiff's complaint also indicates that he intends to bring an Eighth Amendment claim against Defendants Shunk although Plaintiff does not elaborate on the nature of his Eighth Amendment claims.

Plaintiff alleges that Defendant Shunk upheld the false misconduct complaint issued by Defendant Butler; however, a false misconduct report alone does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Plaintiff, therefore, cannot maintain an Eighth Amendment claim against Defendant Shunk.

### 4.    First Amendment Retaliation Claims

Plaintiff alleges that Defendant Butler issued Plaintiff a Class 2 misconduct complaint after Plaintiff told Defendant Butler that he would be filing a grievance. (ECF No. 1, PageID.12.) Plaintiff also alleges that he asked Defendant Shunk to include his constitutional claims in the hearing report regarding Plaintiff's Class 2 misconduct complaint, but Defendant Shunk refused, telling Plaintiff that Plaintiff would need to use the grievance process to address his claims, and eventually finding Plaintiff guilty. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged

20

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff states that he told Defendant Butler that he would be filing a grievance. He also avers that he told Defendant Shunk of his constitutional claims in the course of the misconduct hearing. At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

21

Plaintiff alleges that, when he told Defendant Butler he would be filing a grievance, Defendant Butler issued Plaintiff a Class 2 misconduct complaint. Accepting Plaintiff's allegations as true, as is required at this stage, Plaintiff's First Amendment retaliation claim against Defendant Butler survives screening.

The same is not true of Plaintiff's claim against Defendant Shunk. Plaintiff alleges only that Defendant Shunk instructed Plaintiff to include his constitutional claims in an administrative grievance and eventually found Plaintiff guilty of the charged misconduct. Plaintiff does not allege that Defendant Shunk displayed any retaliatory animus toward Plaintiff that could be attributed to Plaintiff's complaints or that Defendant Shunk would have otherwise found Plaintiff not guilty. Therefore, as to Plaintiff's First Amendment claim against Defendant Shunk, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts that would plausibly suggest the existence of such a claim. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Therefore, any First Amendment retaliation claim against Defendant Shunk will be dismissed for failure to state a claim.

5.    **Fourteenth Amendment Procedural Due Process Claims—False Misconduct Reports**

Plaintiff claims that Defendants Butler and Shunk violated Plaintiff's procedural due process rights in taking actions related to the Class 2 misconduct complaint. To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD. Thus, Plaintiff could not have been denied good time or disciplinary credits as a result of a Class 2 misconduct conviction. Plaintiff, therefore, cannot contend that his misconduct conviction "will inevitably affect the duration of his sentence."

Furthermore, Plaintiff does not allege any facts suggesting that any misconduct conviction resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff fails to

allege any facts whatsoever regarding what sanctions, if any, he received because of the Class 2 misconduct conviction. For these reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claims based upon the alleged false misconduct.

### 6.    Fourteenth Amendment Substantive Due Process Claims

Plaintiff mentions "substantive due process" in the introductory portion of his complaint. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations generally fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

Further, to the extent that Plaintiff seeks to bring a substantive due process claim related to Defendant Butler's actions in denying Plaintiff lunch on a single occasion, his claim again fails

24

because it does not allege the sort of egregious conduct that would support a substantive due process claim.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims. Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### 7.  Fourteenth Amendment Equal Protection Claims

Plaintiff mentions that he intends to bring claims against Defendants for violation of his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*,

801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any *facts* in his claims against Defendants Butler, Shunk, Beaulieu, Voorhees, Howard, Storey, and Batho that would show that others who were similarly situated were treated differently. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly show that the others were similarly situated in all relevant respects.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### 8.    Conspiracy Claims

Plaintiff repeatedly claims that Defendants engaged in a conspiracy. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible

26

suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants. (*See generally* ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that Defendant Shunk found Plaintiff guilty of the Class 2 misconduct complaint issued by Defendant Butler and that each remaining Defendant denied Plaintiff's grievances and or failed to respond to Plaintiff's complaints.

As the United States Supreme Court has held, such allegations, even if hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

### 9.    Violations of MDOC Policy and Rules

Plaintiff references MDOC policy directives and rules within his complaint. (ECF No. 1, PageID.10.) The Court will liberally construe these references as an attempt to bring claims under § 1983. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's § 1983 claims regarding the violation of MDOC policy will be dismissed.

### C.    Section 1985 Claims

Plaintiff also makes passing reference to claims under 42 U.S.C. § 1985. Section 1985 provides:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or

28

indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

There are no allegations in Plaintiff's complaint that would support a claim that any defendant: (1) conspired to prevent an officer of the United States from performing his duty; (2) conspired to intimidate a participant in a proceeding in a court of the United States or conspired to interfere with due process in state courts with the intent to deprive persons of their equal protection rights; or (3) conspired to deprive any person of the equal protection of the laws. Therefore, Plaintiff fails to state a claim under 42 U.S.C. § 1985.

### D.    Claims for Violation of Criminal Laws

Finally, examining the allegations properly joined within this lawsuit, Plaintiff attempts to bring claims against Defendants for violation of state and federal criminal law, including for forgery and perjury. Plaintiff's attempt to sue defendants for monetary damages under these criminal statutes is frivolous. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973). Accordingly, Plaintiff's claims for violation of state and federal criminal law will be dismissed.

### E.    State-Law Claims

Plaintiff also seeks to bring claims for violation of Michigan state law. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc.,* 503 F.3d at 521 ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendants Shunk, Beaulieu, Voorhees, Howard, Storey, and Batho will be dismissed on screening, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against these Defendants. However, because Plaintiff's First Amendment retaliation claim against Defendant Butler, individually, remains, the Court will exercise supplemental jurisdiction over Plaintiff's state-law civil claims against Defendant Butler.

## IV.    Pending Motions

Plaintiff requests that this Court order discovery (ECF No. 1, PageID.9–10, 19) and the appointment of counsel (ECF No. 4). The Court will address each of Plaintiff's motions in turn.

First, the Court will deny Plaintiff's motion for discovery as premature. No defendant has been served in this matter. After Plaintiff's complaint has been served, and if Defendant Butler has entered an appearance, the Court will issue a case management order setting forth relevant dates and limits for discovery. If he wishes to do so, Plaintiff may renew his motion at that time.

Second, Plaintiff seeks the appointment of counsel, claiming that he has no legal experience or understanding and has a vision disability. (ECF No. 4, PageID.38.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these

31

factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 4) will, therefore, be denied.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under Rule 21 of the Federal Rules of Civil Procedure, the Court will drop as misjoined Defendants Desormeau, Green, Belleau, and Teneyck and will dismiss all claims against them without prejudice.

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Shunk, Beaulieu, Voorhees, Howard, Storey, and Batho will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims against Defendants Shunk, Beaulieu, Voorhees, Howard, Storey, and Batho will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendant Butler: claims under 42 U.S.C. § 1981 and 1985, § 1983 official capacity claims, Eighth and Fourteenth Amendment claims, claims of conspiracy, claims for violation of MDOC policy and rules, and all First Amendment claims other than Plaintiff's First Amendment retaliation claim related to the issuance of the Class 2 misconduct complaint, and claims for violation of criminal law. Plaintiff's First Amendment retaliation claim against Defendant Butler, individually, and supplemental state law claims remain in the case. The Court will also deny Plaintiff's request for discovery, and Plaintiff's motion to appoint counsel (ECF No. 4).

An Order consistent with this Opinion will be entered.


Dated:   _____March 3, 2025_____             /s/ Jane M. Beckering_____
                                               Jane M. Beckering
                                               United States District Judge

32